UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ERIC WISE,

       Petitioner,

v.                                    Civil Action No.  2:17-cv-288

ERIC D. WILSON,

       Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Eric Wise's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1, and the Respondent, Eric D. Wilson, Warden, Federal Correctional Complex ("FCC") Petersburg's ("the Respondent") Motion to Dismiss, or Alternatively for Summary Judgment, ECF No. 5. The matter was referred for disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that the relief sought in the Respondent's Motion, ECF No. 5, be **GRANTED**, and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 2005, in the United States District Court for the Northern District of Texas, Petitioner was sentenced to one hundred and sixty-eight (168) months of incarceration for his convictions of production of child pornography and aiding and abetting, enticement of a child

and aiding and abetting, and travel with intent to engage in a sexual act with a juvenile and aiding and abetting, with three years of supervised release to follow the period of incarceration. *See* ECF No. 6 at 2 (citing ECF No. 6, attach. 1 at 6-8).   Additionally, Petitioner was directed to pay Four Thousand Eight Hundred and Twenty Dollars ($4,820.00) as and for restitution.   ECF No. 6, attach. 1 at 11.   As the Respondent notes, Petitioner's restitution obligation is referenced in two separate sections of Petitioner's Judgment in a Criminal Case, and such obligation is the source of the instant dispute.   Restitution is ordered as part of Petitioner's sentence as follows:

### RESTITUTION

The defendant shall pay restitution in the amount of $4,820.00 . . . . If upon commencement of the term of supervised release any part of the restitution remains unpaid, the defendant shall make payments on such unpaid balance beginning 60 days after release from custody at the rate of at least $100.00 per month until the restitution is paid in full.

ECF No. 6, attach. 1 at 11.

Petitioner's specific restitution obligation is also referenced under his special conditions of supervised release:

### SPECIAL CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1. The defendant shall pay restitution in the amount of $4,820.00, payable to the U.S. District Court Clerk . . . .

If upon commencement of the term of supervised release any part of the restitution remains unpaid, the defendant shall make payments on such unpaid balance beginning 60 days after release from custody at the rate of at least $100.00 per month until the restitution is paid in full.

ECF No. 6, attach. 1 at 9.

Petitioner is currently incarcerated in FCC Petersburg, which is a federal correctional facility operated and controlled by the Bureau of Prisons ("BOP"). The BOP has a program called the Inmate Financial Responsibility Program ("IFRP") which was developed "to comply with several federal statutes that 'require a diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations.'" ECF No. 6 at 3 (quoting BOP Program Statement 5380.08 at 1 (Aug. 15, 2005)). *See also Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) (explaining that "the IFRP exists as means of 'encourag[ing] each sentenced inmate to meet his or her legitimate financial obligations.'") (quoting 28 C.F.R. § 545.10). Under IFRP, when a BOP inmate has a financial obligation such as mandatory restitution, prison officials work with the inmate to develop a financial plan and thereafter monitor the inmate's compliance with the plan. ECF No. 6 at 4 (citing 28 C.F.R. §§ 545.11). At a minimum, an IFRP participant must pay at least $25 per quarter and this amount may be increased following evaluation and assessment of Petitioner's progress and financial status. Permissible source of IFRP funds include earnings while incarcerated and family-provided financial support. *See* ECF No. 6 at 4 (citing 28 C.F.R. §§ 545.11). If an inmate refuses to participate in IFRP or otherwise fails to make required payments, he may be subject to negative consequences related to pay, work, housing, program eligibility and other matters. ECF No. 6 at 4 (citing 28 C.F.R. §§ 545.11(d)(1)-(11); BOP Program Statement 5380.08 at 11-13).

Beginning in December 2014, Petitioner began making $25 quarterly payments toward his restitution pursuant to his IFRP plan. ECF No. 6, attach. 1 at 13. These payments continued

until June 2016. On or about August 31, 2016, Petitioner entered into a new IFRP plan wherein he was required to pay $70 per quarter beginning in October 2016. ECF No. 6, attach. 1 at 15. From October 12, 2016 through May 9, 2017, Petitioner made the requisite $70 payments pursuant to his revised IFRP agreement. ECF No. 6, attach. 1 at 13. Petitioner failed to make his June 2017 payment and was subsequently placed in IFRP Refuse status. ECF No. 6, attach. 1 at 19. *See also Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) ("If an inmate verbally refuses to participate in the IFRP or fails to make payments previously agreed upon as part of a financial plan, the BOP may change the inmate's IFRP status or assignment category from 'participates' to 'refuses.'") (citing BOP Program Statement 5380.08 at ¶ 9). Petitioner has made no further payments toward his outstanding restitution obligation and the remaining balance as of November 14, 2017 was $2,238.89. ECF No. 6, attach. 1 at 13.

On or about November 14, 2016, Petitioner filed an administrative remedy request with the Respondent, arguing that his IFRP payments towards his restitution obligation "must cease immediately" because his Judgment in a Criminal Case required Petitioner to begin paying restitution only upon commencement of his period of supervised release. *See* ECF No. 6, attach. 1 at 21-22. On or about November 29, 2016, the Respondent responded in writing to Petitioner's administrative remedy request, explaining that Petitioner's request that "IFRP payments cease immediately" was premised upon Petitioner's incorrect interpretation of the Judgment in a Criminal Case as deferring payment of restitution until Petitioner left BOP custody and began his period of supervised release, and therefore Petitioner's administrative remedy request was

4

denied. The written denial also advised Petitioner that he could appeal this denial to the Regional Director of BOP, if such appeal was effectuated within twenty days of receiving this denial. ECF No. 6, attach. 1 at 24.

On December 1, 2016, Petitioner appealed the Respondent's denial to the Regional Director, and such written appeal was received on January 3, 2017. ECF No. 6, attach. 1 at 25. On January 24, 2017, the Regional Director of BOP denied Petitioner's appeal, concluding that "[a]n investigation of your complaint revealed the [Respondent] responded appropriately to your Request for Administrative Remedy" because the Judgment in a Criminal Case "does not defer payments but sets forth a payment schedule to be implemented while under supervision in the event during your incarceration, you do not complete payment of your court-ordered financial obligations." ECF No. 6, attach. 1 at 26. On February 2, 2017, Petitioner unsuccessfully appealed the decision of the Regional Director to the National Inmate Appeals, reiterating his previous grievance, and also seeking that he be placed in "Temporarily Exempt" status under IFRP, as opposed to "Refuse." ECF No. 6, attach. 1 at 27.

On June 2, 2017, while incarcerated at FCC Petersburg in Hopewell, Virginia, Petitioner filed the instant *pro se* Petition pursuant to Section 2241. ECF No. 1. Therein, Petitioner asserts two separate, but interrelated grounds for habeas relief arising out of the BOP's execution of his restitution obligation as described in the Judgment in a Criminal Case entered by the sentencing court: (1) that because Petitioner is not required to begin paying restitution until after he is released from custody, the BOP improperly compelled his participation in IFRP; and (2) that the BOP continues to unlawfully sanction Petitioner due to his refusal to make IFRP payments while incarcerated. ECF No. 1 at 6-8 ("The Bureau of Prisons is unlawfully executing my sentence. It

5

is forcing me to pay restitution prior to the time designated by the court order."); ECF No. 9 at 4 ("I am presently being sanctioned. If the court rules in my favor, the BOP will be required to remove the sanctions, upon which my wages will be restored to about $12 per month and my spending limit will restored [sic] to $360 per month."). Petitioner seeks the following relief: "order the [Respondent] to stop forcing me to make restitution payments." ECF No. 1 at 8.

On November 15, 2017, the Respondent filed a Motion to Dismiss, or in the alternative, for Summary Judgment and Memorandum in support thereof, seeking denial and dismissal of the Petition, as well as a *Roseboro* Notice. *See* ECF Nos. 5-7. Therein, the Respondent argues that the Court should deny Petitioner's request for habeas relief because such request is moot since Petitioner "has refused to participate in the IFRP and the BOP is no longer collecting IFRP payments towards [Petitioner's] restitution obligation." ECF No. 6 at 8. Alternatively, and assuming that the Petition is not moot and Petitioner seeks recoupment of the previous restitution payments, "the Court should reject [Petitioner's] request because he cannot establish that the BOP unlawfully executed his sentence in a manner contrary to the Constitution or federal law." ECF No. 6 at 9.

On December 4, 2017, Petitioner filed a Response in Opposition to the Respondent's Motion to Dismiss. ECF No. 9. Therein, Petitioner disputes the Respondent's contention that the Petition is moot because Petitioner's placement on IFRP Refuse status has resulted in ongoing "sanctions," since Petitioner's wages and his commissary spending limit were reduced. ECF No. 9 at 3-4. Petitioner's Opposition also reiterates his previous contention that the Judgment in a Criminal Case makes payment of restitution optional, as opposed to compulsory prior to his release from custody and commencement of supervised release. *See* ECF No. 9 at 4-

6

5. On December 5, 2017, the Respondent filed a Reply to Petitioner's Response in Opposition. ECF No. 8.   The Respondent again argues that the Petition is moot, and that to the extent Petitioner attempts to save his claim from the mootness bar, such efforts are unavailing since Petitioner did not exhaust his administrative remedies with respect to the disciplinary consequences (specifically, reduction of his wages and reduction of commissary spending limit) of his refusal to participate in IFRP restitution payment.   Notwithstanding the failure to exhaust, the Respondent contends that the result would be unchanged because Petitioner's challenge to the disciplinary consequence is meritless since such consequences "amount to the loss of privileges, not the imposition of hardships upon non-participating inmates.'"   ECF No. 8 at 2 (quoting *Robertson v. Wilson*, No. 2:14-CV-311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015).   Accordingly, the Respondent's dispositive motion (ECF No. 5) is ripe for recommended disposition.

## II.  ANALYSIS

### A.  Habeas Relief pursuant to 18 U.S.C. § 2241

Before evaluating the merits of Petitioner's Section 2241 request for habeas relief, the Court must ascertain whether it has jurisdiction over those claims.   Because the Respondent does not dispute that Section 2241 is the proper vehicle for asserting this type of claim, the undersigned **FINDS** that this Court has jurisdiction to consider the instant § 2241 Petition and the merits thereof for reasons detailed herein.

    1.  18 U.S.C. § 2241

Section 2241 petitions (such as the instant Petition) "generally challenge[] the execution of a federal prisoner's sentence, including such matters as the administration of parole,

computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). The relevant portion of the statute provides that "(c) The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because the purpose of a Section 2241 petition for a writ of habeas corpus is "to test the legality of detention," a petition can be brought pursuant to 28 U.S.C. § 2241 "'regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him.'" *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995) (citing *Arias v. Rogers,* 676 F.2d 1139, 1142 (7th Cir. 1982); quoting *Dickerson v. Louisiana,* 816 F.2d 220, 224 (5th Cir.), *cert. denied,* 484 U.S. 956 (1987)) (internal citations omitted). Here, because the instant § 2241 Petition challenges the way in which the Bureau of Prisons executes Petitioner's sentence, and specifically, the collection of restitution, it is properly before the Court. *See Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015) ("We now hold that an inmate's challenge to the BOP's administration of the IFRP is a challenge to the "execution" of a sentence that is cognizable under 28 U.S.C. § 2241."). *See also Brinson v. Rivera*, No. CA 6:12-2075-DCN-KFM, 2012 WL 4589002, at *2 (D.S.C. Sept. 11, 2012), *report and recommendation adopted*, No. CA 6:12-2075 DCN, 2012 WL 4593078 (D.S.C. Oct. 1, 2012), *aff'd*, 514 F. App'x 343 (4th Cir. 2013) ("Petitioner is challenging the application of the BOP's financial program, the IFRP, to payment of his court-ordered restitution, which is properly brought as a petition for habeas relief under 28 U .S.C. § 2241.") (citing *United States v. Childs,* 126 F. App'x 96 (4th Cir. 2005) (unpublished)

8

(challenge to implementation of criminal fines does not seek release from custody, and thus arises under § 2241)).

    2. Exhaustion

    Unlike other statutes authorizing a prisoner to seek federal habeas relief, "§ 2241 is silent on exhaustion. Even so, courts have generally required parties to exhaust available administrative remedies before seeking § 2241 relief from the federal courts." *Janvier v. I.N.S.*, 174 F. Supp. 2d 430, 434 (E.D. Va. 2001). The undersigned **FINDS** that Petitioner appealed only his claim that the Respondent improperly compelled his payment of restitution through the BOP's prescribed administrative remedy scheme, and has therefore properly exhausted his remedies with respect to this claim only. *See* Part I, *supra*. However, as the Respondent notes, nothing in the record suggests that Petitioner also properly exhausted his administrative remedies with respect to his separate, but related claim that he continues to be "sanctioned" for his refusal to participate in IFRP, resulting in an improper reduction of his inmate wages and commissary spending limit. *See* ECF No. 9 at 3-4. *See also* ECF No. 9 at 2. However, as explained in Part II.B.3, *infra*, even if Petitioner had properly exhausted this claim (as it relates to the ongoing "sanctions" of reduced wages and commissary spending limit), Petitioner would not be entitled to relief on the merits thereof.

**B. Petitioner is not entitled to federal habeas relief**

    As more fully explained herein, Petitioner failed to establish that the BOP has improperly interpreted the Judgment in a Criminal Case as to the commencement of and the manner in which Petitioner's restitution obligation is satisfied, and therefore, Petitioner is not entitled to the relief sought by the Petition.

1. Petitioner's claim is not moot.

The Respondent argues that because the BOP has placed Petitioner on IFRP Refuse status and is no longer seeking restitution payment through the IFRP plan, the relief Petitioner seeks (Court-mandated cessation of Petitioner's restitution repayment) is moot. ECF No. 8 at 2. *See Watson v. I.N.S.*, 271 F. Supp. 2d 838, 839 (E.D. Va. 2003) ("If events occur subsequent to the filing of a lawsuit that divest the court of the ability to award meaningful relief, the case is moot.") (citing *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983)). Thus, in the instant procedural posture, the undersigned must determine whether the cessation of such pre-supervised release restitution payments "caused the [P]etition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). To be sure, "'[t]his case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–478 (1990); citing *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)). Contrary to the Respondent's position, the undersigned **FINDS** that the Petition continues to present an active case or controversy since the Petition challenges not only the BOP's interpretation of his Judgment in a Criminal Case, but also "challenges the BOP's authority to establish and enforce an IFRP financial plan in connection with court-ordered restitution." *Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016). Additionally, Petitioner continues to be subjected to negative consequences due to his refusal to make payments in accordance with such plan. This satisfies the well-established

10

requirement that Petitioner "must have suffered, or be threatened with, an actual injury traceable to the [Respondent] and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

  2.  The Judgment in a Criminal Case authorizes the commencement of Petitioner's obligation to pay restitution prior to his period of supervised release.

The crux of Petitioner's claim for habeas relief is premised on his incorrect interpretation of his restitution obligation as described in the Judgment in a Criminal Case. By focusing on only one section of the multi-section Judgment in a Criminal Case discussing restitution ("Special Conditions of Supervision"), instead of reading both sections ("Special Conditions of Supervision" and "Restitution") in conjunction with one another, Petitioner has erroneously premised the commencement of such restitution obligation solely upon his release from BOP custody and his period of supervised release. *See* ECF No. 9 at 5 ("My restitution is not due immediately. It is due upon the commencement of the term of supervised release, exactly as the court states."). Additionally, Petitioner's reliance on the introductory statement to the "Special Conditions of Supervision" section, namely, "[w]hile the defendant is on supervised release pursuant to this Judgment . . . ," ECF No. 6, attach. 1 at 9, Petitioner ignores specific language common to both sections: "[i]f upon commencement of the term of supervised release any part of the restitution remains unpaid, the defendant shall make payments on such unpaid balance beginning 60 days after release from custody at the rate of at least $100.00 per month until the restitution is paid in full." *Compare* ECF No. 6, attach. 1 at 9 ("Special Conditions of Supervision"), *with* ECF No. 6, attach. 1 at 11 ("Restitution").

11

As the Respondent notes, the Judgment in a Criminal Case did not "specify that [Petitioner's] restitution payment was due on 'a date certain or in installments' during his term of incarceration, the payment was due and payable immediately." ECF No. 8 at 3 (citing 18 U.S.C. § 3572(d)(1); *Brinson v. Rivera*, No. 6:12-CV-2075, 2012 WL 4589002, at *3 (D.S.C. Sept. 11, 2012)). Section 3572(d)(1) provides, in pertinent part, that "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). Here, the operative Judgment in a Criminal Case "sets the amount of restitution, but does not establish a set payment schedule, so applicable law makes payment due immediately. . . . The requirement to make payment immediately indicates fines and restitution "are to be paid to the greatest extent possible and as soon as possible." *Brinson v. Rivera*, No. CA 6:12-2075-DCN-KFM, 2012 WL 4589002, at *3 (D.S.C. Sept. 11, 2012), *report and recommendation adopted*, No. CA 6:12-2075 DCN, 2012 WL 4593078 (D.S.C. Oct. 1, 2012), *aff'd*, 514 F. App'x 343 (4th Cir. 2013) (quoting *Summersett v. Baucknecht,* 496 F. Supp. 2d 636, 639 (D.S.C. 2007) (citing *Coleman v. Brooks,* 133 F. App'x 51, 53 (4th Cir. 2005) (unpublished))). *See also* ECF No. 6, attach. 1 at 9, 11 (directing payment of restitution in the amount of $4,820.00, but not indicating that payment is due on a date certain or authorizing installment payments). Accordingly, and contrary to Petitioner's argument, his obligation to pay restitution commenced immediately, as opposed to at a later time or during his supervised release period. Only in the event that any portion of Petitioner's restitution obligation remains outstanding at the time of his release from custody that the obligation to make restitution payments becomes a special condition of supervised release.

Having disposed of the first portion of Petitioner's claim, namely, *when* Petitioner's restitution obligation begins, the undersigned must then evaluate *how* Petitioner is required to satisfy this obligation.

3. <u>BOP does not exceed its statutory authority by enforcing payment of court-ordered restitution through IFRP and by imposing consequences for non-participation.</u>

It appears to the undersigned that in his Opposition in Response to the Respondent's Motion to Dismiss, Petitioner attempts to make an argument that BOP is improperly compelling Petitioner's participation in IFRP because of Petitioner's interpretation of when the sentencing court intended Petitioner's payment of restitution to commence. The IFRP is a program that enables prisoners to make scheduled payments toward their court-ordered financial obligations directly from their inmate accounts. *See* 28 C.F.R. § 545.10–11. "Prison staff assist[s] inmates in developing financial plans, which are subject to periodic review." *Fontanez v. O'Brien*, 807 F.3d 84, 85 (4th Cir. 2015). The IFRP is a voluntary program which prohibits BOP from compelling an inmate to make payments. *Id.* at 85 (citing *United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010)). Although the program is voluntary, "inmates with financial obligations who refuse to participate in the IFRP may no longer be eligible for many privileges, including more desirable housing and work outside the prison." *Id.* at 85 (citing 28 C.F.R. § 545.11(d)).

Many courts within the Fourth Circuit and in other circuits have considered the legality of IFRP, and specifically, whether error exists where BOP collects court-ordered restitution through IFRP. In *United States v. Miller*, the Fourth Circuit held that "[a] district court may not delegate its authority to set the amount and timing of restitution to the BOP or a probation officer, without retaining ultimate authority over such decisions." *United States v. Miller*, 77 F.3d 71, 77-78

13

(4th Cir. 1996). Recently, the Fourth Circuit concluded that "participation in the IFRP does not violate *Miller.*" *United States v. Caudle*, 261 F. App'x 501, 503–04 (4th Cir. 2008) (citing *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) (holding that BOP has discretion to place inmate in IFRP when sentencing court has ordered immediate payment of court-imposed fine) (citing *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999), and *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 549-50 (9th Cir. 1998))). As the Fourth Circuit observed in *Coleman*, "'[t]he immediate payment directive is generally interpreted to require payment to the extent that the defendant can make it in good faith, beginning immediately.'" *Coleman v. Brooks*, 133 F. App'x 51, 53 (4th Cir. 2005) (quoting *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) (internal quotation marks omitted) (holding that "BOP has the discretion to place an inmate in the IFRP when the sentencing court has ordered immediate payment of the court-imposed fine") (citing *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999); *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 549-50 (9th Cir. 1998))). Thus, the *Coleman* Court reasoned, "[t]he BOP therefore is properly using the IFRP as an avenue to collect Coleman's restitution, just as it would any other debt owed by him." *Coleman*, 133 F. App'x at 53 (citing *McGhee*, 166 F.3d at 886) ("Nothing barred the BOP from ensuring pursuant to the IFRP that [defendant] make good-faith progress toward satisfying his court-ordered obligations.").

Courts within the Fourth Circuit have similarly considered and rejected Section 2241 petitions challenging the consequences imposed by the BOP as a result of an inmate's decision not to participate in the voluntary IFRP program. *See, e.g., Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) ("Courts, however, have

14

regularly rejected challenges to the BOP's authority to operate and administer the IFRP."). In one such case, the Court described the IFRP as "a voluntary program through which inmates work with staff to develop a plan to meet their financial obligations, in exchange for a number of incentives offered only to compliant IFRP participants." *Wadley v. Zych*, No. 7:12CV00105, 2012 WL 1533285, at *2 (W.D. Va. Apr. 30, 2012) (citing 28 C.F.R. § 545.11; BOP Program Statement 5380.08). "When officials initially classify a BOP inmate, the unit team reviews with that inmate all of his financial obligations and helps him develop a play to make satisfactory progress toward meeting these obligations while incarcerated." *Wadley v. Zych*, No. 7:12CV00105, 2012 WL 1533285, at *2 (W.D. Va. Apr. 30, 2012) (citing § 545.11(a) and (b)). The governing regulations provide that "[p]ayments under § 545.11(b) 'may be made from institution resources or non-institution (community) resources' . . . . Thus, the regulation 'authorize[s] the Bureau to consider funds received from sources other than prison work in determining whether an inmate is able to participate in the IFRP." *Wadley v. Zych*, No. 7:12CV00105, 2012 WL 1533285, at *2 (W.D. Va. Apr. 30, 2012) (quoting *Pierson v. Morris*, 282 F. App'x 347, 348 (5th Cir. 2008) (unpublished)). *See also Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) ("An inmate's payments may be made using any combination of funds earned while incarcerated (that is, from 'institution resources') and funds provided to the inmate from friends or family (that is, from 'non-institution (community) resources')") (citing 28 C.F.R. § 545.11(b)). Based on Petitioner's submissions, it appears that he receives both institution resources (wages from his prison employment) and community resources (funds provided by his parents). *See* ECF No. 9 at 3 ("In May of 2017, my

15

parents stopped sending me the funds necessary to cover the $70 per month FRP payment. My institution wages could not cover that payment so I was placed on 'FRP Refuse.'").

Additionally, "[a]n inmate who chooses not to comply with the conditions of the IFRP program also chooses to forego the incentives conditioned on participation, including such privileges as prison employment and furloughs." *Wadley v. Zych*, No. 7:12CV00105, 2012 WL 1533285, at *2 (W.D. Va. Apr. 30, 2012) (citing § 545.11). Here, Petitioner argues that his placement on "IFRP Refuse" status has resulted in his being subjected to such "sanctions" as reduced wages earned at his prison job and a limitation on his commissary spending. Both of these consequences are specifically authorized by the governing regulation. *See* 28 C.F.R. § 545.11(d)(3) and (d)(6) ("Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following . . . (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay . . . (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refuses shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations . . .").

Courts within the Fourth Circuit and elsewhere have explicitly rejected this argument because "[t]he negative consequences stemming from a refusal to participate in the IFRP 'amount to the loss of privileges, not the imposition of hardships upon non-participating inmates.'" *Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4,

16

2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) (quoting *Driggers v. Cruz*, 740 F.3d 333, 338 (5th Cir. 2014)). In *Robertson*, a court in this division determined that the petitioner's claim that the BOP was "punishing" him for not paying court-ordered restitution lacked merit, and also concluded that the petitioner was unable to "establish that the loss of any such privileges and inducements attendant to IFRP participation rise to the level of constitutionally-protected liberty or property interests." *Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (no liberty interest in avoiding disciplinary confinement); *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (no liberty interest in not being transferred); *United States v. Lemoine*, 546 F.3d 1042, 1049 (9th Cir. 2008) (no entitlement "to any of the benefits agreeing to participate in the IFRP would provide"); *James v. Quinlan*, 866 F.2d 627, 630 (3rd Cir. 1989) (no liberty or property interest existed in prison job assignments potentially at risk due to non-compliance with IFRP); *Williams v. Farrior*, 334 F. Supp. 2d 898, 903–04 (E.D. Va. 2004) (noting other circuits have "considered and rejected due process challenges to the [IFRP]" and finding no liberty interest in prison placement or job assignment)). As the *Robertson* Court explained,

> [c]onstitutionally-protected interests do not arise simply because an inmate loses access to privileges or is subjected to more adverse conditions of confinement. Instead, an interest protected by the Due Process Clause arises when the deprivation of a privilege "imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life.". . . However, the loss of privileges that may follow upon refusing to participate in the IFRP and to pay one's court-ordered financial obligations fails to create such a severe hardship.

17

*Robertson v. Wilson*, No. 2:14CV311, 2015 WL 9806680, at \*4 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14CV311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221–23 (2005); *Sandin v. Conner*, 515 U.S. 472, 484–85 (1995)) (internal citations omitted).   Therefore, Petitioner's (unexhausted) challenge to the loss of privileges he suffered as a result of his refusal to continue making IFRP plan payments similarly lacks merit.   The Petition fails to state a claim upon which relief can be granted, and the Respondent is entitled to judgment as a matter of law.

4. <u>Conclusion</u>

In summation, while Petitioner properly invoked Section 2241 as the vehicle to challenge the manner in which his federal sentence is being executed, as detailed herein, the undersigned **FINDS** that the substantive claims in the instant § 2241 Petition lack merit and the undersigned **RECOMMENDS** that the relief sought by the Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 5) be **GRANTED**, and the Petition (ECF No. 1) be **DENIED AND DISMISSED WITH PREJUDICE.**

## III.   RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS**   that the relief sought by the Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 5) be **GRANTED**, and the Petition (ECF No. 1) be **DENIED AND DISMISSED WITH PREJUDICE.**

## IV.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and counsel of record for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 18, 2018